McDONALD, J.
(dissenting).
I concur in the judgment with respect to the termination of Leanne’s parental rights, but I dissent from the majority’s opinion with respect to Kirk’s parental rights. Kirk had not abandoned the child. Kirk maintained significant and meaningful contact with the child not inconsistent with what one would expect of a noncustodial parent not a resident of the state in which the child resides. The State never made any effort to provide Kirk with services or otherwise involve him in any meaningful way in this case because the primary, if not sole, focus of the Iowa Department of Human Services (IDHS) was to provide services to the mother and stepfather. When those efforts failed, Kirk was treated as flotsam of his ex-wife’s wreckage.
I.
The State has the burden to prove the allegations of the petition by clear and convincing evidence. Iowa Code § 232.96. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. In re L.G., 532 N.W.2d 478, 481 *445 (Iowa Ct.App.1995). It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. Id. Because our review is de novo, we should not be passive where there is a deficient presentation of evidence. Instead, we must satisfy ourselves the State has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for termination of a parent’s rights, a standard imposed to balance the parent’s interest in maintaining the parent-child relationship and the State’s obligation to act parens patriae. I conclude the State has not met its significant evidentiary burden in this case.
II.
The first ground for termination requires the State to establish by clear and convincing evidence “that the child has been abandoned or deserted.” Iowa Code § 282.116(1)(b). The majority concludes the State has not proved this ground for termination, and I agree.
III.
A.
The second ground for termination requires the State to first prove, as relevant here, Kirk has not “maintained significant and meaningful contact with the child.” Iowa Code § 232.115(1)(e)(3). “ ‘[Significant and meaningful contact’ includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent.” Id. I conclude the State has not proved by clear and convincing evidence that Kirk failed to maintain significant and meaningful contact with K.G.
It is necessary to provide some context regarding the history of this family. Kirk and Leanne married and tried unsuccessfully for a period of timé to have children. After Kirk and Leanne treated with medical providers, K.G. was born into the marriage. From the time of KG.’s birth until the parents’ separation and divorce, Kirk and Leanne raised K.G. in a family unit. When the parents separated and divorced, Kirk paid child support and exercised visitation every other weekend. When Leanne left Colorado for Iowa in November 2012, the record shows Kirk exercised visitation in a manner not inconsistent with a noncustodial parent who does not reside in the same state as the child. K.G. lived with Kirk in Colorado for the entire summer of 2013. This is the first summer after Leanne moved K.G. to Iowa. Shortly after KG.’s return from Colorado, this case commenced. Kirk had planned to exercise visitation over winter break in 2013, but IDHS disallowed the visitation because of this case. Presumably, summer visitation in 2014 also would have been disallowed for the same reason. It is wholly disingenuous for the State to now argue Kirk failed to have more frequent visitation with the child when the State disallowed the father’s visitation with the child — visitation the father exercised for years without interruption prior to the State becoming involved with this family because of Kirk’s ex-wife’s conduct.
In addition to exercising visitation with K.G. until the State prevented the same, Kirk assumed the duties of parenthood one would expect of a noncustodial parent who resides in a different state than the child. Kirk paid child support, and he is current on his child support obligations. See Iowa Code § 232.116(1)(e)(3) (identifying satisfaction of “financial obligations” as duty of parent). He maintained continued interest in the child. See id, (identifying “continued interest” as a factor). Kirk communicated with his daughter by telephone and text message on a regular basis. See id. (identifying “genuine effort to maintain *446 communication with the child” as a parental duty). In addition to his communication directly with K.G., Kirk also communicated regularly with the mother regarding KG.’s welfare. Kirk sent K.G. Christmas and birthday gifts. He sent gift cards to K.G. and T.S., even though T.S. is not his child. He also provided K.G. with an Easter basket almost every year of her life because “she’s big time on Easter.” Most important, there is no evidence that Kirk has not maintained a central place of importance as a parent in this child’s life. See id.
The majority nonetheless concludes the State proved this element because the affirmative assumption of parental duties includes the duty to obtain counsel and litigate the case. Kirk’s litigation conduct, or lack thereof, has little relationship to whether he had “significant and meaningful contact with the child.” If anything, Kirk’s litigation conduct seems more probative of the “reasonable efforts” element,, discussed below. By focusing on Kirk’s litigation conduct, the majority has effectively incorporated the “reasonable efforts” element back into the “significant and meaningful contact” element. That simply confuses two issues the majority concedes are separate:
That subparagraph has two requirements: “the parents (1) have not maintained significant and meaningful contact with the child during the previous six consecutive months and (2) have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.”
Ante, at 487; See ante, at 437 (“The two requirements of subparagraph (e)(3) are clearly in the conjunctive: connected, joined together. Each is separately required ... ”). Accordingly, I conclude Kirk’s failure to immediately retain counsel and aggressively litigate a case that had nothing to do with his conduct and everything to do with his ex-wife’s conduct is not probative of the whether Kirk maintained “significant and meaningful contact” with his child.
The majority also concludes the State proved this element because Kirk failed to make a “genuine effort to complete the case permanency plan.” It should be noted that there is no exhibit or document entitled “case permanency plan” in this record. The majority “presumes” a report to the court submitted during the disposition hearing held on December 9, 2013, was,' in fact, the case permanency plan. We should not terminate a parent’s rights on the ground the parent failed to comply with the “case permanency plan,” which is a statutorily defined term, see Iowa Code § 232.2(4), when we cannot find the “case permanency plan” in the record. If the report to the court is the case permanency plan, it sets forth fourteen recommendations for the family, only one of which directly relates to Kirk. The report to the court states Kirk shall make his intentions regarding K.G. known. The report contains no deadline for Kirk to make his intentions known.
In April 2014, the juvenile court was to hold a permanency hearing with respect to K.G. The court continued the hearing until June 2014. Subsequently, on May 21, 2014, the State filed its petition to terminate Kirk’s parental rights. In response, the juvenile court cancelled the permanency hearing and instead scheduled a termination hearing for June 2014. Within several days of the petition to terminate parental rights being filed, Kirk retained counsel to resist the termination of his parental rights. It cannot be un-deremphasized that there was no substantive hearing regarding K.G. or Kirk between thé time of the disposition hearing in December and the time of the termi *447 nation hearing in June. Thus, between the time of the December disposition hearing and the time of the next hearing Kirk made known his intentions to maintain his parental rights to K.G. He therefore complied with all of the terms and conditions of the case permanency plan, or court report, that applied to him.
Considering all the facts and circumstances, I conclude the State has failed to prove this element by clear and convincing evidence.
B.
In addition to proving the lack of significant and meaningful contact, the State is required to prove by clear and convincing evidence that Kirk “made no reasonable efforts to resume care of the child despite being given the opportunity to do so.” Iowa Code § 232.116(1)(e)(3). This requires proof the State provided the parent with the opportunity to resume care of the child, including offering appropriate and adequate services, and the parent failed to avail himself of the services offered. See In re A.C., No. 03-1314, 2003 WL 22455895, at *2-3 (Iowa Ct.App. Oct. 29, 2003) (reversing termination of father’s rights where State failed to prove it offered meaningful services to father). As previously discussed, this element is separate and distinct from the “significant and meaningful contact” element. The State’s failure of proof as to this element is thus an independent ground for vacating the juvenile court’s termination order.
The juvenile court concluded termination is warranted because Kirk did not make “reasonable efforts to resume care of the child [after] being given the opportunity to do so.” Specifically, the juvenile court faulted Kirk for his failure to take legal action upon the opening of this case. The juvenile court’s conclusion that Kirk should have been more legally proactive within the CINA case erroneously places the burden of proof on Kirk. See In re J.C., No. 14-0100, 2014 WL 1234432, at *3-4 (Iowa Ct.App. Mar. 26, 2014) (rejecting State’s position that termination was proved because father should have done more to seek custody of child during CINA proceedings). In addition, the narrow focus on whether Kirk was actively involved in the litigation glosses over an important element of proof: to establish the element, the State is required to prove Kirk failed to make reasonable efforts to resume care of K.G. after “being given the opportunity to do so.”
In reviewing this file, it is clear IDHS did not give Kirk a meaningful opportunity to resume care of the child. IDHS’s focus was to provide services to Leanne and John to facilitate their reunification with the child. The services offered this family related almost exclusively to domestic violence and methamphetamine abuse. Those services were wholly inapplicable to Kirk. IDHS admitted that it did not seek services for Kirk, stating in a report that “Kirk had no involvement in services due to living in Colorado.” I do not in any way fault IDHS for focusing its efforts on Leanne and John. IDHS’s charge is to take action in the best interest of the child. Leanne and John were KG.’s custodial parents within the State’s jurisdiction and the persons whom the State could most effectively provide services to facilitate reunification. The fact that IDHS’s focus was well-intentioned and well-placed, however, does not relieve the State of its burden of proving by clear and convincing evidence that the State gave Kirk a meaningful opportunity to resume care of his child under this statutory ground for termination.
The reality of this case is that it was never about Kirk until it was. At that point, it was too late for him in IDHS’s *448 view. Under these circumstances, I would hold the State failed to prove by clear and convincing evidence that it provided Kirk with any meaningful opportunity to resume the care of K.G. See In re A.L., No. 14-0428, 2014 WL 2432421, at *4 (Iowa Ct.App. May 29, 2014) (reversing termination order and holding the State failed to prove the father “was given the opportunity to do so” “because no reunification services were provided while the child-in-need-of-assistance action was pending” and explaining “services offered after the filing of the termination petition” do not satisfy the department’s obligation to make reasonable reunification efforts); In re J.W.E.L., No. 12-2309, 2013 WL 751305, at *4 (Iowa Ct.App. Feb. 27, 2013) (reversing termination where noncustodial low income father did not make attempts to resume care of the child until the end of the case because “the plan for reunification had focused solely on the mother until less than three months before the termination hearing”); In re K.P., No. 11-0663, 2011 WL 3117780, at *2 (Iowa Ct.App. Jul. 27, 2011) (reversing termination where State failed to provide the single service necessary to facilitate reunification).
This case is very similar to J.C., 2014 WL 1234432. In that case, the juvenile court terminated the noncustodial father’s parental rights on several grounds, including section 232.116(1)(e). We concluded that the State failed to prove its case. Id. at *2. As in this case, the father in J.C. had exercised visitation consistent with that of a noncustodial parent. See 2014 WL 1234432, at *3 (“There is nothing to suggest he abdicated the role of noncustodial parent.”). As in this case, the State contended the “father should have stepped forward to seek custody of the child during the child in need of assistance proceeding.” Id. Our court explained that the argument impermissibly shifted the burden of proof to the father. Further, our court explained that the father’s lack of involvement in the case was because “[v]irtually all the department’s reunification efforts were directed at the mother.” Id. The same is true of this case. Ultimately, the J.C. court concluded the State failed to prove grounds for terminating the father’s parental rights pursuant to paragraph (e). Id. at *2-3. The same result should obtain here.
IV.
I conclude the State failed to prove grounds for termination by clear and convincing evidence. At minimum, the evidence in this case is in equipoise, and the tie goes to the runner. I respectfully dissent with respect to the termination of Kirk’s parental rights.